IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| RONALD JASON MANN, <br> AIS # 254 475 <br><br> Plaintiff, <br><br> v. <br><br> SGT. JASON CRUMPTON, et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) CIVIL ACTION NO. 2:19-CV-130-RAH-CSC <br> ) <br> ) <br> ) <br> ) |

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff Ronald Jason Mann, who is currently incarcerated in the Holman Correctional Facility in Atmore, Alabama, filed, pro se, this civil rights action pursuant to 42 U.S.C. § 1983, seeking relief for certain claimed violations of his federally protected rights while confined in the Elmore County Jail ("Elmore"), in Wetumpka, Alabama. Doc. 1. Plaintiff brings suit against Defendants Sergeant Jason Crumpton, Officer Edward Oliver, III, Officer Jesse Hill, and Officer Kameron Ricks ("Defendants"), and asserts Defendants failed to protect Plaintiff from an assault by other inmates. *See*, *id*. Plaintiff's complaint is unclear in which capacity he sues Defendants and is also unclear as to the relief sought. *See*, *id*.

Pursuant to the Court's Orders, Defendants filed an answer, special report, supplemental special reports, and supporting evidentiary material addressing Plaintiff's claims for relief. Docs. 17, 27, 30, 32, 37. In these documents, Defendants deny they acted in violation of Plaintiff's constitutional rights. The Defendants also raise the defense of exhaustion in their special report. Doc. 17 at 9-12. Indeed, the Prison Litigation Reform Act ("PLRA") requires that "inmates complaining about prison conditions exhaust prison grievance remedies before initiating a lawsuit." *Jones v. Bock*, 549 U.S. 199, 202 (2007). Defendants argue, because Elmore utilizes a grievance procedure and because Plaintiff failed to adequately exhaust his administrative remedies prior to filing this lawsuit, Plaintiff's claims are barred.

Upon receipt of Defendants' special report and supplemental special reports, the Court issued an Order providing Plaintiff an opportunity to file a response. Doc. 18. The Order informed Plaintiff that his response should be supported by affidavits or statements made under penalty of perjury and other evidentiary materials. *Id*. at 3. The Order further cautioned Plaintiff, unless "sufficient legal cause" is shown within fifteen days of entry of this Order "why such action should not be undertaken,

upon the expiration of the time for the plaintiff to file a response as allowed by this order, the court may at any time thereafter and without further notice to the parties (1) treat the special reports and any supporting evidentiary materials as a motion to dismiss or motion for summary judgment, whichever is appropriate, and (2) after considering any response as allowed by this order, rule on the motion in accordance with law." *Id*. at 4. Plaintiff filed a response to Defendants' special report. Doc. 22. Pursuant to the directives of the Order entered on May 6, 2019, the Court now treats Defendants' special report as a motion to dismiss with respect to the failure to exhaust claims and as a motion for summary judgment as to any remaining claims and concludes that judgment is due to be granted in favor of Defendants.

### I. Standard

Based on the foregoing, the Court deems it appropriate to treat the special report filed by Defendants as a motion to dismiss with respect to the exhaustion defense. *Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir. 2008) (internal quotations omitted) ("[A]n exhaustion [defense] ... is not ordinarily the proper subject for a summary judgment [motion]; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment."); *Trias v. Florida Dept. of Corrections*, 587 F. App'x 531, 534 (11th Cir. 2014) (holding that the district court properly construed defendant's "motion for summary judgment as a motion to dismiss for failure to exhaust administrative remedies[.]"). To the extent, however, the Court concludes Plaintiff has properly exhausted his administrative remedies as to any claim, the Court will address the merits of those claims on summary judgment.

"In considering a motion to dismiss, this court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff." *Rose v. Rich*, No. 519CV00123RDPJEO, 2019 WL 6712138, at *2 (N.D. Ala. Nov. 8, 2019), *report and recommendation adopted*, No. 519CV00123RDPJEO, 2019 WL 6702042 (N.D. Ala. Dec. 9, 2019) (citing *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004)). "That factual content must allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A complaint, or any claim therein, is subject to dismissal under Rule 12(b)(6) when the allegations, on their face, show that an affirmative defense bars recovery on the claim." *Id*. (citing *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003)).

That being said, "[w]here exhaustion—like jurisdiction, venue, and service of process—is treated as a matter in abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not

decide the merits and the parties have sufficient opportunity to develop a record." *Bryant*, 837 F.2d at 1376 (citation and footnotes omitted).  "Requiring jury trials to resolve factual disputes over the preliminary issue of exhaustion would be a novel innovation for a matter in abatement and would unnecessarily undermine Congress's intent in enacting the PLRA's exhaustion requirement: that is, to 'reduce the quantity and improve the quality of prisoner suits.'" *Id*. at 1376-77 (citation and footnotes omitted).

The Court has undertaken a thorough and extensive review of all the evidence in this matter. After such review, the Court finds Plaintiff has failed to exhaust his administrative remedies on his pending claims and that this action is due to be dismissed for Plaintiff's failure to exhaust.  Indeed, the record demonstrates, Plaintiff failed to properly exhaust Elmore's grievance procedure and, at most, shows Plaintiff intended to file one grievance against Defendants, but then chose not to pursue this grievance.  *See* Doc. 22 at 1.  Plaintiff admits that he failed to exhaust his administrative remedies because "Grievance Captain Tuck of the Elmore County Jail staff," informed Plaintiff that the grievance would not resolve in Plaintiff's favor.  *Id*.  While Plaintiff maintains that he feared retaliation if he pursued his grievance, Plaintiff fails to show that Defendants, or any other member of Elmore's jail staff, threatened Plaintiff.  *See Pavao v. Sims*, 679 F. App'x 819, 826 (11th Cir. 2017).  Accordingly, the Court concludes, for the reasons more fully discussed below, this action is due to be dismissed for Plaintiff's failure to exhaust.

**II.     Statement of Facts**

In his complaint, Plaintiff alleges, on or about September 29, 2018, while housed in 6 Pod, cell 6-6, Defendants encouraged and allowed Plaintiff to be physically assaulted by inmates Chase Hanger, Michael Hill, and Derek Burnett.  Doc. 1 at 2-3.  Plaintiff contends Defendant Ricks agreed to allow the inmates to assault Plaintiff, that Plaintiff was injured by the assault, and, to defend himself from the three inmates, Plaintiff broke a broom to use in his defense.  *Id*. at 3.  Plaintiff asserts, only when Defendants saw Plaintiff with the broom, did they remove Plaintiff from cell 6-6.  *Id*.  Plaintiff alleges, when he was removed from the cell and after Plaintiff requested medical treatment, Defendants Ricks and Crumpton stated that Plaintiff "needed a good ass whipping and to shut his mouth." *Id*.  Defendants then placed Plaintiff in a different pod and cell.  *Id*.

Defendants deny each allegation in Plaintiff's complaint and further maintain, Plaintiff's claims are barred for Plaintiff's failure to exhaust his administrative remedies while confined in Elmore.  Doc. 17.

Plaintiff was booked into Elmore on September 2, 2018, and charged with one count of attempted murder and two counts of robbery in the first degree. Doc. 17-6 at 2; *see also* Doc. 17-5.[1] This same date, Plaintiff signed an Elmore "Enemies list," which indicated Plaintiff feared one inmate named "Bull" and one inmate with the last name "Box." Doc. 17-6 at 6.

Approximately one month later, on September 29, 2018, an incident occurred in which Plaintiff alerted Defendants that he was assaulted. Doc. 17-1 at 3. In his affidavit, Defendant Crumpton testifies:

> In regards to [Plaintiff's] allegations, to the best of my recollection and belief, I recall the following:
>
> On September 29, 2018, inmate Michael Hill asked [Defendant Ricks] if he could speak with me.
>
> I said that was fine and [Defendant Ricks] escorted inmate Hill to my office.
>
> During our conversation, inmate Hill informed me that [Plaintiff] was stealing the older/weaker inmates' food and was also slapping them around.
>
> At that time, I informed inmate Hill that we could not be everywhere at once.
>
> Inmate Hill asked: "well, what if I beat him up?"
>
> I immediately informed inmate Hill that he could not just beat someone up.
>
> Our conversation ended and [Defendant Ricks] escorted inmate Hill back to his pod unit.
>
> Subsequently, [Plaintiff] pressed the 6-pod intercom button and advised [Defendant Hill] that he had just been assaulted.
>
> At that time, [Defendant Ricks] responded to 6-pod.
>
> When [Defendant Ricks] opened the door to 6-pod, [Plaintiff] began cursing at [Defendant Ricks] and accused [Defendant Ricks] of allowing him to be assaulted.
>
> At this time, [Defendant Ricks] closed the door to 6-pod and radioed to inform me of the situation.
>
> I responded to 6-pod and was met by [Defendant Oliver]. We observed [Plaintiff] standing at the door of the 6-pod, and was holding a broom that he had just broken into three pieces.

---

[1] In his affidavit, Elmore County Jail Warden Mike Henline testifies, Plaintiff's attempted murder charge was later changed to murder. Doc. 17-5 at 3.

4

>    I instructed [Plaintiff] to drop the pieces of the broomstick, and he complied with my directives.
>
>    When I questioned [Plaintiff], he advised me that he had been assaulted by fellow inmate Michael Hill, and two other inmates.
>
>    [Plaintiff] also advised me that he broke the broomstick for the purposes of using the pieces as weapons to defend himself.
>
>    I spoke with inmate Hill, who advised me that he did not attack [Plaintiff], nor did he know who did.
>
>    . . . .
>
>    [Plaintiff] was taken to the nurse's station to have his seemingly minor injuries tended to.
>
>    After the nurse cleared him to return to general population, [Plaintiff] was placed on disciplinary lockdown status for breaking the broomstick in cell 7-4 pending his disciplinary hearing.

Doc. 17-1 at 2-4. Defendant Crumpton reported the assault and, pursuant to the incident report, the following events took place in 6 Pod:

>    On [September 29, 2018, Plaintiff] pressed the 6 Pod intercom button and advised [Defendant Hill] that he had just been assaulted. At this time, [Defendant Ricks] responded to 6 Pod. When [Defendant Ricks] opened the door to 6 Pod, [Plaintiff] began cursing at [Defendant Ricks] and accusing [Defendant Ricks] of allowing him to be assaulted. At this time, [Defendant Ricks] closed the door to 6 Pod and informed [Defendant Crumpton] of the situation. [Defendant Crumpton] and [Defendant Oliver] responded to 6 Pod, where they observed [Plaintiff] standing at the door of 6 Pod, holding a broom that had been broken into 3 pieces. [Defendant Crumpton] instructed [Plaintiff] to drop the pieces of the broom stick. [Plaintiff] complied with… [Defendant Crumpton's] directives. When [Defendant Crumpton] questioned [Plaintiff], [Plaintiff] advised that he had been assaulted by Inmate Michael Hill and two other inmates. [Plaintiff] also advised that he broke the broomstick for the purpose of using the pieces as weapons to defend himself. [Defendant Crumpton] spoke with Inmate Hill, who advised that he did not attack [Plaintiff], nor did he know who did. Inmate Hill did not have any visible markings that would indicate that he had been involved in an altercation. After speaking with multiple other inmates in 6 Pod, the majority of inmates stated that [Plaintiff] would regularly strike and steal food from the older/weaker inmates in the Pod. [Defendant Crumpton] knew that [Plaintiff] had a history of this kind of behavior. [Plaintiff] was taken to the nurse to have seemingly minor injuries tended to. After the nurse cleared [Plaintiff] to return to general population, [Plaintiff] was placed on disciplinary lockdown status in cell 7-4 pending disciplinary hearing. A copy of [Plaintiff's] body chart was placed in his inmate folder. No further incident occurred at this time.

Doc. 17-8 at 2. Plaintiff's September 29 body chart noted Plaintiff's right hand was slightly swollen and that his face showed superficial abrasions, light purple discoloration, and a contusion. Doc. 17-9 at 2. The medical personnel caring for Plaintiff prescribed Plaintiff Ibuprofen, returned Plaintiff to general population, and directed Plaintiff, if problems persist, to place a sick call. *Id*.

Regarding Elmore's grievance policy, in his affidavit, Elmore Warden Mike Henline testifies:

> It is the policy of [Elmore] that all inmates have the individual ability to bring complaints, concerns, and other issues to the attention of the jail staff. An inmate with a complaint, concern, or other issues regarding any aspect of their incarceration is encouraged and expected to bring the matter to the attention of the jail staff. All members of the jail staff receiving grievances are charged with handling them in a manner set forth in the grievance procedure. An inmate filing a grievance or appealing a grievance will not be retaliated against for filing a grievance.
>
> Ordinarily, grievances are to be made in writing. An inmate with a grievance may request a grievance form from any member of the jail staff. Upon request, a staff member shall provide a copy of the grievance form to the inmate. All grievances must be filed within 14 days of the incident complained of.
>
> Where a grievance is of an emergency nature, it may be made orally to any staff member. A grievance is an 'emergency' when the subject of the grievance, if left un-addressed, has a strong likelihood of resulting in a breach of security, serious physical harm to any person; and/or serious harm to the health of any person. The determination of whether an inmate's complaint is an emergency is left to the discretion of the staff member responding to the grievance.
>
> If an inmate is unsatisfied with the response to their written or oral grievance, he or she may appeal the decision by submitting a written appeal, within 24 hours of receiving a response, to the jail administrator on a separate grievance form.
>
> If the inmate is dissatisfied with the outcome of the appeal, he or she may, within 24 hours, appeal the decision in writing to the Chief Deputy.
>
> If the inmate is dissatisfied with the outcome of the appeal, he or she may, within 24 hours, appeal the decision in writing to Sheriff Bill Franklin.
>
> An appeal to the Sheriff is the final appeal an inmate may take.
>
> Upon receipt of an appeal, the Sheriff shall determine whether the appeal has merit and what appropriate actions need to be taken.
>
> Regardless of the decision, the Sheriff shall inform the inmate of the decision either personally, in writing, or through a member of the jail staff designated to inform the inmate of the Sheriff's decision.

> A document shall be placed in the inmate's jail file reflecting the appeal decision and the date and time the inmate was notified. The Sheriff or the designated representative will sign this document.
>
> Inmate handbooks are provided on the Jail's video visitation machine.
>
> Inmates are allowed to review the inmate handbook any time during the day.

Doc. 17-5 at 3-4; *see also* Doc. 17-11 at 36-39.

### III. Discussion

#### A. Exhaustion

Defendants raise the defense of exhaustion in this action. Doc. 17 at 9-12. In addressing the requirements of 42 U.S.C. § 1997e as to exhaustion, the Eleventh Circuit has

> recognized that '[t]he plain language of th[is] statute makes exhaustion a precondition to filing an action in federal court.' *Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000) (per curiam) (quoting *Freeman v. Francis*, 196 F.3d 641, 643–44 (6th Cir. 1999)). This means that 'until such administrative remedies as are available are exhausted,' a prisoner is precluded from filing suit in federal court. *See id.* (affirming dismissal of prisoner's civil rights suit for failure to satisfy the mandatory exhaustion requirements of the PLRA); *Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir. 1999) ('reaffirm[ing] that section 1997e(a) imposes a mandatory requirement on prisoners seeking judicial relief to exhaust their administrative remedies' before ***filing*** suit in federal court), *modified on other grounds*, 216 F.3d 970 (11th Cir. 2000) (en banc); *Miller v. Tanner*, 196 F.3d 1190, 1193 (11th Cir. 1999) (holding that under the PLRA's amendments to § 1997e(a), '[a]n inmate incarcerated in a state prison ... must first comply with the grievance procedures established by the state department of corrections before filing a federal lawsuit under section 1983.'); *Harper v. Jenkin*, 179 F.3d 1311, 1312 (11th Cir. 1999) (per curiam) (affirming dismissal of prisoner's civil suit for failure to satisfy the mandatory exhaustion requirements of § 1997e(a)); *Alexander v. Hawk*, 159 F.3d 1321, 1328 (11th Cir. 1998) (affirming dismissal of prisoner's *Bivens* action under § 1997e(a) for failure to exhaust administrative remedies prior to filing suit in federal court).

*Leal v. Georgia Dept. of Corrections*, 254 F.3d 1276, 1279 (11th Cir. 2001) (emphasis in original). Further, the law is well-settled that "the question of exhaustion under the PLRA [is] a threshold matter that [federal courts must] address before considering the merits of the case. Because exhaustion is mandated by the statute, [a federal court has] no discretion to waive this requirement." *Myles v. Miami-Dade County Correctional and Rehabilitation Dept.*, 476 F. App'x 364, 366 (11th Cir. 2012) (internal quotation marks omitted) (citing *Chandler v. Crosby*, 379 F.3d 1278, 1286 (11th Cir. 2004) and *Alexander v. Hawk*, 159 F.3d 1321, 1325-26 (11th Cir. 1998)). The Court will therefore "resolve this issue first." *Myles*, 476 F. App'x at 366.

"When deciding whether a prisoner has exhausted his remedies, the court should first consider the plaintiff's and the defendants' versions of the facts, and if they conflict, take the plaintiff's version of the facts as true. If in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed. If the complaint is not subject to dismissal at this step, then the court should make specific findings in order to resolve the disputed factual issues related to exhaustion." *Myles*, 476 F. App'x at 366 (internal quotation marks omitted) (citing *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008)). Consequently, a district court "may resolve disputed factual issues where necessary to the disposition of a motion to dismiss for failure to exhaust [without a hearing]. [As noted *supra*,] the judge properly may consider facts outside of the pleadings to resolve a factual dispute as to exhaustion where doing so does not decide the merits, and the parties have a sufficient opportunity to develop the record." *Trias*, 587 F. App'x at 535 (internal citations omitted). Based on the foregoing, the Eleventh Circuit specifically rejected the argument that "disputed facts as to exhaustion should be decided by a jury [or other factfinder]." *Id.*

The Eleventh Circuit maintains, however, while "proper exhaustion is generally required, a remedy must be 'available' before a prisoner is required to exhaust it." *Pavao*, 679 F. App'x at 823 (quoting *Turner v. Burnside*, 541 F.3d 1077, 1082, 1084 (11th Cir. 2008)). The Court, in *Pavao*, noted the following three scenarios in which an administrative remedy is "unavailable":

> [f]irst, 'an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates.' *Ross v. Blake*, ⸺ U.S. ⸺, 136 S.Ct. 1850, 1859, 195 L.Ed.2d 117 (2016); *Turner*, 541 F.3d at 1083 (the PLRA 'does not require inmates to craft new procedures when prison officials demonstrate ... that they will refuse to abide by the established ones'). Second, 'an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use.' *Ross*, 136 S.Ct. at 1859; *Turner*, 541 F.3d at 1084 ('Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available.'). And third, a remedy may be unavailable 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.' *Ross*, 136 S.Ct. at 1860; *Turner*, 530 F.3d at 1385 (holding that serious threats of retaliation may make remedies unavailable).

*Pavao*, 679 F. App'x at 823.

Upon review of the complaint, Defendants' special report and the undisputed evidentiary materials filed in support thereof and Plaintiff's response to the special report, the Court concludes that Defendants' motion to dismiss is due to be granted for Plaintiff's failure to exhaust his claims. It is undisputed that Elmore has a grievance procedure in place which includes appellate remedies. Docs. 17-5, 17-11. Also undisputed by Plaintiff is that his grievance never "went th[rough] because[,] before

the hearing was held on the Grievance[,] Grievance Captain Tuck of the Elmore County Jail Staff informed [Plaintiff], 'why are you going [through] with this when you know it's not gonna [sic] end in your favor?'" Doc. 22 at 1.  Plaintiff maintains, he did not "continue with the Grievance" because he feared retaliation.  *Id*.  While Plaintiff asserts that he feared retaliation for seeking redress through the prison grievance procedure, "[f]or a prison official's threats of retaliation against a prisoner to make the administrative remedy 'unavailable,' the threat must (1) actually deter the prisoner from lodging a grievance or pursing a particular part of the process and (2) be one that would deter a reasonable prisoner of ordinary fortitude from doing so." *Pavao*, 679 F. App'x at 826 (citing *Turner*, 541 F.3d at 1085).  Here, Plaintiff asserts no allegation that Defendants, or any other member of Elmore's staff, threatened Plaintiff.  Rather, Plaintiff solely mentions he felt intimated by Captain Tuck's statement that Plaintiff's grievance would be unsuccessful.  Doc. 22 at 1.  Even if this is somehow taken as a continuing threat, such a threat would not deter a reasonable inmate from pursuing his grievance.  The Court, therefore, concludes that this entire action could be dismissed on the basis of exhaustion alone.

However, for the reasons set forth below, the Court also recognizes that the principles of sovereign immunity mandate dismissal of Plaintiff's official capacity claims asserted against Defendants.

### B.     *Sovereign Immunity*

Insofar as Plaintiff brings suit against Defendants in their official capacity and requests monetary damages, Defendants are entitled to sovereign immunity.  Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees].  There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity.  A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute.  Waiver may not be implied. Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848-49 (11th Cir. 2015) (internal quotation marks and citations omitted).  Thus, a state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).  Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity."  Ala. Const. Art. I, §

14. The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit. *Selensky*, 619 F. App'x at 849 (citing *Alabama v. Pugh*, 438 U.S. 781, 782 (1978)) (consent is prohibited by the Alabama Constitution). "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990)). In light of the foregoing, Defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity).

### IV.    Conclusion

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendants' motion to dismiss and or for summary judgment (Doc. 17) be GRANTED as specifically set forth herein.

2. Judgment be GRANTED in favor of Defendants.

3. this case is DISMISSED.

4. No costs be taxed.

On or before **January 26, 2022,** the parties may file objections to this Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made. Frivolous, conclusive, or general objections to the Recommendation will not be considered.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 12th day of January 2022.

/s/ CHARLES S. COODY  
CHARLES S. COODY  
UNITED STATES MAGISTRATE JUDGE